IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CARMEN BETHANCOURT,

    **Plaintiff,**

    **v.**

WAL-MART STORES EAST, LP,

    **Defendant.**

**CIVIL ACTION NO.
1:22-CV-4211-TWT-CCB**

## FINAL REPORT AND RECOMMENDATION

Plaintiff Carmen Bethancourt brings this action against Defendant Wal-Mart Stores East, LP, her former employer, asserting claims of discriminatory discharge and failure to accommodate in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112, *et seq.*, and claims of interference and retaliation in violation of the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq.* (Doc. 1). This case comes before the Court on Plaintiff's motion for partial summary judgment, (Doc. 60), and Defendant's motion for summary judgment, (Doc. 62).

For the reasons that follow, the undersigned **RECOMMENDS** that Plaintiff's motion for partial summary judgment, (Doc. 60), be **GRANTED IN**

**PART AND DENIED IN PART** and that Defendant's motion for summary judgment, (Doc. 62), be **DENIED** in its entirety.

I.      **FACTS**

      A.      **Standards for Presenting Facts at Summary Judgment**

Unless otherwise indicated, the Court draws the following facts from:

- Plaintiff's "Statement of Undisputed Material Facts" in support of her motion for partial summary judgment, (Doc. 60-2);

- Defendant's "Response to Plaintiff's Statement of Undisputed Material Facts," (Doc. 73-1);

- Defendant's "Statement of Additional Facts" in support of its opposition to Plaintiff's motion for partial summary judgment, (Doc. 73-2);

- Plaintiff's "Responses to Defendant's Statement of Additional Facts," (Doc. 81-1);

- Plaintiff's "Notice of Objections to Portions of Defendant's Statement of Additional Material Facts," (Doc. 82);

- Defendant's "Statement of Undisputed Material Facts" in support of its motion for summary judgment, (Doc. 62-2);

- Plaintiff's "Responses to Defendant's Statement of Undisputed Material Facts," (Doc. 74-2); and

- Plaintiff's "Statement of Additional Material Facts," (Doc. 74-3).

Additionally, as indicated and as needed, the Court draws some facts directly from the record. *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

2

For those facts submitted by the moving party on each motion for summary judgment that are supported by citations to record evidence, and that the opposing party has not specifically disputed and refuted with citations to admissible record evidence showing a genuine dispute of fact, the Court deems those facts admitted under Local Rule 56.1(B). *See* LR 56.1(B)(2)(a)(2), NDGa. ("This Court will deem each of the movant's facts as admitted unless the respondent: (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1(B)(1).").

The Court has excluded assertions of fact by any party that are wholly immaterial, presented as arguments or legal conclusions, unsupported by a citation to admissible evidence in the record, or asserted only in the party's brief and not the statement of facts. *See* LR 56.1(B)(1), NDGa. ("The Court will not consider any fact: (a) not supported b y a citation to evidence (including page or paragraph number); (b) supported by a citation to a pleading rather than to evidence; (c) stated as an issue or legal conclusion; or (d) set out only in the brief and not in the movant's [or respondent's] statement of undisputed facts.").

Because this case is before the Court on cross-motions for summary judgment, the Court will, when addressing the merits of any party's motion, view all evidence and factual inferences in the light most favorable to the party opposing summary judgment. *See Chavez v. Mercantile Commercebank, N.A.,* 701 F.3d 896, 899 (11th Cir. 2012). The parties dispute some of the proffered facts, but many of those objections are over matters that are not necessarily material to the disposition of this case. The Court will discuss any objections and disputes presented as to the parties' proffered facts only when necessary to do so regarding a genuine dispute of a material issue of fact.

### B.      Defendant's Objection to Plaintiff's Declaration

Before setting out the undisputed material facts, it is necessary to consider Defendant's argument in its reply brief in support of its motion for summary judgment, objecting to one of Plaintiff's declarations. (Doc. 80 at 4–6). Defendant argues that two contentions in Plaintiff's declaration, (Doc. 74-15 at ¶¶ 8–9), should be disregarded under the sham affidavit rule because they directly contradict her deposition testimony and because Plaintiff waived review and signature of her deposition transcript. (Doc. 80 at 4–6). Plaintiff argues that she has not claimed that the deposition transcript is inaccurate (such that it could have been corrected via an errata sheet) but rather that her declaration clarifies the

meaning of her deposition testimony. (Doc. 81 at 15). She also argues that the sham declaration doctrine does not apply because her declaration does not contradict her previous testimony. *Id.*

The Eleventh Circuit has held that, "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins and Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984) (holding that the district court correctly concluded that an affidavit that directly contradicted prior deposition testimony was a sham); *see also In re Stand 'N Seal Prods. Liab. Litig.*, 636 F. Supp. 2d 1333, 1335 (N.D. Ga. 2009). However, the Eleventh Circuit has distinguished between "discrepancies which create transparent shams" and "discrepancies which create an issue of credibility or go to the weight of the evidence." *Tippens v. Celotex Corp.*, 805 F.2d 949, 953-54 (11th Cir. 1986) (holding that, although a jury might find the discrepancy in the witness's deposition and affidavit testimony "to affect his credibility or to diminish its persuasiveness, it is not so inherently inconsistent that the court must disregard the previous affidavit as a matter of law"). A party seeking to exclude statements under the sham affidavit rule bears a heavy burden. *See In re Stand 'N Seal*, 636 F.

Supp. 2d at 1335.

Defendant takes issue with Plaintiff's testimony in her declaration that:

- she "understood [Defendant's deposition question about whether she "discuss[ed]" her disability or need for accommodation with anyone at Wal-Mart before her termination] to refer to <u>verbal</u> conversations with Wal-Mart officials about [her] disability or accommodation" and she did not "understand these questions to refer to giving Wal-Mart officials <u>written</u> notes from [her] doctors" and thus she "testified only about [her] verbal communications (or lack of communications) with Wal-Mart officials and didn't mention [her] May 2021 doctor's notes," (Doc. 74-15 at ¶ 8 (referencing her deposition testimony at Doc. 61 at 81:22–24, 85:8–24)), and

- when she "testified about whether and when [she] tried to 'talk' to someone at Wal-Mart about having [her] absences excused as medical leave[,] . . . [she] was testifying in that excerpt about <u>verbal</u> conversations with Wal-Mart officials ('talking'). So, [she] didn't testify about the May 2021 doctor's notes, in which [she] tried <u>in writing</u> to have some of [her] absences excused as medical leave," (Doc. 74-15 at ¶ 9 (referencing her deposition testimony at Doc. 61 at 127:25–129:15).

Defendant argues that this testimony provides "post-hoc explanations through a declaration for the purpose of changing clear deposition testimony in response to unambiguous questions" such that it "renders Plaintiff's declaration a sham." (Doc. 80 at 5). The Court disagrees that these paragraphs of Plaintiff's declaration directly contradict her deposition testimony such that the declaration is a sham. In her deposition, Plaintiff testifies that she did not "discuss" her disability or need for accommodation or "talk" about having her absences excused with anyone at

6

Wal-Mart prior to discovering that she had been terminated. (Doc. 61 at 81:22–24, 85:8–24, 127:25–129:15). However, in other parts of her deposition, Plaintiff testified that she provided written doctors' notes to Defendant prior to learning that she had been terminated. (Doc. 61 at 114:21–115:23 (Plaintiff's testimony that she tried to give her doctors' notes to her supervisors to have her absences authorized), 139:12–140:17 (Plaintiff's testimony that her husband brought in her May 22 doctor's note on May 22 or May 24)).

Contrary to Defendant's arguments, the Court does not interpret the deposition questions as being "unambiguous" or Plaintiff's declaration as clearly contradicting her deposition testimony (or, for that matter, as even being inconsistent with her deposition testimony) and declines to disregard these contentions in the declaration. *See Pinder v. John Marshall L. Sch., LLC*, 11 F. Supp. 3d. 1208, 1245 (N.D. Ga. 2014) (determining that there was not "such a clear and direct contradiction between the Affidavit and the earlier testimony so as to support the extraordinary remedy of exclusion"). The Court is also unconvinced by Defendant's argument that Plaintiff cannot clarify the meaning of her deposition testimony because she waived the right to review the transcript. Plaintiff does not argue that her deposition transcript is inaccurate. Rather, she clarifies that she understood ambiguous questions during her deposition about

whether she "talked" about or "discussed" certain matters with Defendant to mean verbally discussing those matters with Defendant—which the Court finds to be a plausible interpretation of the terms "talk" and "discuss." As such, Plaintiff's declaration does not clearly contradict her deposition testimony such that this is a "transparent sham[]" versus a discrepancy that "create[s] an issue of credibility or goes to the weight of the evidence." *Tippens*, 805 F.2d at 953-54; *see also Chandler v. Volunteers of Am., N. Ala., Inc.*, No. 10-S-2961-NW, 2013 WL 832133, at *3 (N.D. Ala. Feb. 28, 2013) ("The fact that plaintiff felt the need to make so many changes to her prior testimony will serve as excellent ammunition for impeachment at trial, and it may go a long way toward supporting a challenge to plaintiff's credibility. But a question of credibility is not sufficient to deem a sworn statement a 'sham.'"), *aff'd*, 598 F. App'x 655 (11th Cir. 2015).

### C.   Material Facts

#### 1.   Plaintiff's Employment with Defendant

Defendant is a retail corporation that operates over 10,000 stores. (Doc. 74-2 at ¶ 1). Plaintiff began working for Defendant as a self-checkout cashier in February of 2020 in Buford, Georgia. (Doc. 73-1 at ¶ 1; Doc. 74-2 at ¶ 22). Plaintiff's title changed to Team Associate in February of 2021, but her duties remained the same. (Doc. 74-2 at ¶ 23). Plaintiff worked for Defendant for more than 12 months

before her termination, worked more than 1,250 hours in those 12 months, and worked at a site where Defendant employed 50 or more employees within 75 miles of the worksite. (Doc. 73-1 at ¶¶ 2–3). Sandy, a Team Lead, was one of Plaintiff's direct supervisors. *Id*. at ¶ 5. Plaintiff's primary duties included providing in-person customer service, assisting customers having issues with the self-checkout machines, resolving customer issues and concerns, and maintaining the front-end service area. (Doc. 73-1 at ¶ 11; Doc. 74-2 at ¶ 24). Plaintiff's job description includes "[m]oves continuously throughout the work area" as a physical activity that is necessary for the position. (Doc. 74-2 at ¶ 25; Doc. 63-2 at 3). When she was allowed to rest her legs, Plaintiff was easily able to perform these duties, and no one at Defendant gave her any indication that her performance was a problem. (Doc. 73-1 at ¶ 12).

### 2. Plaintiff's Medical Condition

Plaintiff suffers from pedal edema, a condition in which too much fluid flows to her feet and ankles, causing pain and swelling, particularly when she stands or walks for extended periods of time. (Doc. 73-1 at ¶ 6). When suffering from a pedal edema flare-up, Plaintiff experiences excruciating pain when she

stands or walks, such that she must sit down. *Id.* at ¶ 7.[1]  At times, the pain became so severe that Plaintiff's doctors ordered her to take a few days off work to rest and keep her feet elevated until the swelling and pain went down. *Id.* ¶ 8.

### 3.    Plaintiff's Attendance and Defendant's Policies

Defendant's Attendance and Punctuality Policy states that "[r]egular and punctual attendance is a required and essential function of each associate's job." (Doc. 60-6 at 1). The Attendance Policy provides for assignment of points whenever an employee misses work without authorization and states that employees who accumulate five or more points in a rolling six-month period will be subject to termination. (Doc. 73-1 at ¶ 14; Doc. 74-2 at ¶¶ 18, 21).[2]  An employee's managers have discretion to decide whether an unauthorized absence

---

[1]  Defendant objects to this fact (and others) as immaterial. (Doc. 73-1 at ¶ 7). Some of the proposed facts that the Court declines to exclude on materiality grounds are not "material" as that term is generally employed in the summary judgment context. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (identifying material facts as those that "might affect the outcome of the suit under the governing law"). However, the Court includes some of the facts that have been objected to on materiality grounds for background purposes or to provide context for the Court's analysis. Those facts ultimately deemed material should be apparent from the analysis.

[2]  Plaintiff admits that this is what Defendant's policy states but disputes that Defendant actually terminates any employee who accrues five or more attendance points. (Doc. 74-2 at ¶ 21).

will accrue a point or what to do if an employee accumulates excessive points. (Doc. 74-3 at ¶¶ 8–9). Plaintiff's attendance records indicate that she reached five points on April 22, 2021, but she remained employed by Defendant for approximately another month. (Doc. 73-1 at ¶ 15). Between April 22, 2021, and May 9, 2021, Plaintiff accrued six more attendance points. *Id*. at ¶ 16; (*see also* Doc. 60-7 at 6–7). Before her termination, no one at Defendant disciplined or reprimanded Plaintiff for her absenteeism or discussed her absences with her, (Doc. 73-1 at ¶ 18), but Plaintiff admitted that attendance was important for her job, (Doc. 74-2 at ¶ 27). Plaintiff believed that her absences were related to her medical condition, but she did not tell any of her supervisors that except through her doctors' notes. (Doc. 61 at 107:11–16). The Attendance and Punctuality policy directs employees in need of an absence longer than three scheduled shifts to discuss the matter with their supervisor or HR representative, who will assist them with the leave request process by directing them to Sedgwick, Defendant's 3rd-party administrator that facilitates leave of absence and accommodation requests. (Doc. 74-2 at ¶ 13; Doc. 74-3 at ¶ 27; *see also* Doc. 73-1 at ¶ 23; Doc. 60-6 at 6).

Defendant has an Accommodation in Employment policy that sets out the steps an employee must take to request a reasonable accommodation for an alleged disability. (Doc. 74-2 at ¶¶ 3–4). Employees may request an

accommodation by telling a salaried member of management in their facility or an HR representative that they need help to do their job or access the facility because of their medical condition. *Id*. at ¶ 5. If Defendant's "facility management is unable to grant [the employee's] request," the accommodation policy directs employees to "make a formal request for accommodation from Walmart's Accommodation Service Center." (Doc. 74-6 at 2–3). Defendant's policies recognize that a request for FMLA leave can also constitute a request for an accommodation under the ADA if the individual's serious health condition is also a disability. (Doc. 73-1 at ¶ 20).

The terms and procedures for absences due to serious health conditions are maintained in Defendant's FMLA Leave of Absence policy. (Doc. 74-2 at ¶ 10). Defendant's FMLA Leave of Absence policy directs employees to submit leave requests to their "manager and Sedgwick if the need for leave is foreseeable" and states that employees "must give notice as soon as possible" if the need for leave is not foreseeable (but it does not say to whom). (Doc. 74-6 at 7; *see also* Doc. 74-3 at ¶¶ 25–26). The FMLA Leave of Absence policy does not state what happens if an employee submits a request only to a manager or Sedgwick, rather than to both. (Doc. 74-3 at ¶ 26).

### 4.   Plaintiff's Leave Requests in May of 2021

Plaintiff did not report to work on May 22, 2021. (Doc. 81-1 at ¶ 2). On May 22 or 24, 2021, Plaintiff's husband delivered her May 22 doctor's note to Plaintiff's Team Lead, Sandy. (Doc. 73-1 at ¶ 21; Doc. 74-3 at ¶¶ 17, 19; Doc. 81-1 at ¶ 4). The parties dispute on which date Plaintiff's husband brought the note to Sandy, and Plaintiff's deposition testimony is unclear on this point. (*Compare* Doc. 61 at 139:15-140:3 (Plaintiff's testimony that the doctor's note that referenced her diagnosis was provided to Defendant on May 22, 2021), *and* Doc. 74-14 at ¶¶ 4–8 (Plaintiff's husband's declaration that he brought the May 22 doctor's note to one of Defendant's managers on May 22 because the note asked for the 22nd and 23rd off, and he and Plaintiff wanted to make sure those absences were excused), *with* Doc. 61 at 140:10-17 (Plaintiff's testimony that she's "guessing it was the 24th" when her husband brought her doctor's note to Sandy), *and* Doc. 56 at 51:3–13 (Monique Martin's 30(b)(6) testimony for Defendant that she did not see any "electronic footprint" in Defendant's records showing that Plaintiff called in her May 22 and May 23 absences to Defendant)).[3]

The May 22 doctor's note identified Plaintiff's disability as pedal edema and

_____

[3] Part of the trouble is that there were two doctor's notes from May of 2021—one from May 22, (Doc. 60-7 at 8), and one from May 24, (*id.* at 9). It is not

13

requested medical leave on May 22 and 23. (Doc. 73-1 at ¶ 22; Doc. 60-7 at 8). This note was also provided to Sedgwick. (Doc. 73-1 at ¶ 23). Plaintiff accrued another attendance point for being absent on May 22, 2021. (Doc. 60-7 at 7; Doc. 74-3 at ¶ 21). The May 24 doctor's note requested additional leave, with Plaintiff returning to work on May 26, 2021, along with limited time standing or walking and a restriction to sitting for 75 percent of Plaintiff's work hours for four weeks. (Doc. 73-1 at ¶ 25; Doc. 60-7 at 9). On May 24, 2021, Plaintiff submitted FMLA leave paperwork, including her May 2021 doctors' notes, to Sedgwick, requesting medical leave to cover May 22 through May 25, 2021. (Doc. 81-1 at ¶ 5; Doc. 74-2 at ¶ 37; Doc. 81-1 at ¶ 10).[4] Plaintiff did not request FMLA leave from Sedgwick at any time before May 24, 2021. (Doc. 81-1 at ¶ 9; Doc. 61 at 117:9–12). The

---

always clear from the transcript of Plaintiff's deposition which note is being referred to when the parties discuss the doctor's notes. (*See* Doc. 61 at 114:21–115:25 (Plaintiff's testimony that she gave one doctor's note "to Sandy, and the other one was just laying on Shantrice's desk that had never even been opened" and she thought the unopened note was "the last" doctor's note.)). The Court will refer to these as the May 22 note and May 24 note, with the dates signifying the dates on the notes themselves, not the dates on which they were submitted to Defendant.

[4] Plaintiff does not dispute that she first submitted FMLA leave paperwork to Sedgwick on May 24, 2021, but she disputes that this submission to Sedgwick was her first request for FMLA leave because she alleges that she had already submitted a leave request to her Team Lead via her husband bringing a doctor's note on May 22, 2021. (Doc. 81-1 at ¶ 5).

documentation from Sedgwick (showing that Plaintiff reported her leave request to Sedgwick on May 24, 2021) supports Martin's testimony that Defendant was not aware of Plaintiff's leave request until May 24, 2021, when the Sedgwick request reached Defendant's inbox. (Doc. 81-1 at ¶ 11; Doc. 64 at 4). Sedgwick was in the process of determining whether Plaintiff's leave request was protected under the FMLA, but it halted the process because it was informed that Plaintiff had been terminated. (Doc. 56 at 26:10–18, 62:6–63:7; Doc. 64-1 at 2 (letter from Sedgwick to Plaintiff on May 26, 2021, stating "We have been informed that your employment at Walmart has ended as of 5/23/2021. Based on this information, your leave of absence is now closed.")).

Defendant's attendance records list Plaintiff as "absent" on May 24, 2021, although she was not penalized with an attendance point for that date. (Doc. 74-3 at ¶ 24; Doc. 60-7 at 7). Plaintiff did not contact Defendant's Accommodation Service Center referenced in Defendant's accommodation policy. (Doc. 74-2 at ¶ 44).

### 5. Plaintiff's Termination

#### i. Date of and Reason for Termination

Defendant offers two proposed facts regarding when exactly Plaintiff was terminated and for what reason: that "Wal-Mart terminated Plaintiff's

15

employment on May 23, 2021, for violating its attendance policy," (Doc. 62-2 at ¶ 36), and that "[o]n May 23, 2021, Wal-Mart terminated Plaintiff's employment for violating its attendance policy by having excessive unapproved absences—i.e., exceeding the points allotted for absences in a rolling six-month period," (Doc. 73-2 at ¶ 3).

Plaintiff objects to both facts, and the Court will consider Plaintiff's objections to each in turn. To support the proposed fact that "Wal-Mart terminated Plaintiff's employment on May 23, 2021, for violating its attendance policy," (Doc. 62-2 at ¶ 36), Defendant cites to the declaration of Monique Martin, an HR employee, who was Defendant's designated representative for its 30(b)(6) corporate deposition in this case. *Id.* (citing to Doc. 63 at ¶ 7)). Martin states that a "true and correct copy of the Workday records regarding Plaintiff and made in the regular course of business is attached" to her declaration as Exhibit A. (Doc. 63 at ¶ 7 (referencing Doc. 63-1 (the Workday records))). Plaintiff argues that paragraph 36 of Doc. 62-2 is based on inadmissible hearsay, impermissibly contradicts Defendant's binding 30(b)(6) testimony, and is unsupported by the cited evidence. (Doc. 74-2 at ¶ 36).

First, as to Plaintiff's argument that the cited business records are inadmissible hearsay, the Court disagrees. Federal Rule of Evidence 803(6)

exempts from the hearsay rule documents made at or near the time of an event by, or from information transmitted by, a person with knowledge, if the documents were kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the documents, all as shown by the testimony of the custodian or other qualified witness. Fed. R. Evid. 803(6). "The touchstone of admissibility under the business records exception to the hearsay rule is reliability . . ." *United States v. Bueno-Sierra*, 99 F.3d 375, 378 (11th Cir. 1996) (determining that the requirements of Rule 803(6) were satisfied even though "the custodian of the records had no knowledge of who prepared them"). Martin's declaration is not based on inadmissible hearsay. As an HR representative for Defendant, Martin was competent to lay the foundation for the business records. *See Rosenberg v. Collins*, 624 F.2d 659, 665 (5th Cir. 1980) ("Any person in a position to attest to the authenticity of certain records is competent to lay the foundation for the admissibility of the records . . .").[5] "While it is true, as [Plaintiff] points out, [Martin] did not expatiate on her specific job experience or how exactly the records

---

[5] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

were maintained [or created], [this Court is] mindful that the absence or extent of personal knowledge regarding preparation of a business record affects the weight rather than the admissibility of the evidence." *Chadwick v. Bank of Am., N.A.*, 616 F. App'x 944, 948 (11th Cir. 2015) (internal quotation marks and alteration omitted). And although Plaintiff correctly argues that Martin says little about the procedures by which the documents were created, (Doc. 82 at 3–4), Martin does say that Defendant employs 2.1 million associates, that she works as an HR representative for Defendant and has since 2018, that she has substantial knowledge of Defendant's processes and procedures regarding HR issues, that the records at issue were made in the regular course of business, and that she reviewed the records attached to her declaration. (Doc. 63 at ¶¶ 1, 4–7). Her testimony satisfies Rule 803(6), and the documents attached as Doc. 63-1 meet the business-records exception.

However, although the Workday records are admissible as business records, they nevertheless do not support Defendant's proposed fact, (Doc. 62-2 at ¶ 36). Defendant relies on these records to show that it (1) terminated Plaintiff's employment on May 23, 2021, (2) because Plaintiff violated Defendant's attendance policy. *Id.* The Workday records do not support either point. Although the records state in some places that Plaintiff was terminated on May 23, 2021,

18

(Doc. 63-1 at 2, 5, 11, 13), the records also state that Plaintiff's date of termination was May 24, 2021, (*id.* at 3). Martin does not address or explain this apparent inconsistency. (*See* Doc. 63). The Workday records also do not support that Plaintiff was terminated for violating Defendant's attendance policy, as the records state only that the reason for Plaintiff's termination was "Involuntary > Policy Violation (inactive)." (Doc. 63-1 at 13). The records show that Plaintiff's termination was coded in Defendant's system as being based on a policy violation, but do not specify which policy. Simply put, the citation to the Workday records does not support Defendant's proposed fact about when and why Plaintiff was terminated.[6]

To support the proposed fact that "[o]n May 23, 2021, Wal-Mart terminated Plaintiff's employment for violating its attendance policy by having excessive unapproved absences—i.e., exceeding the points allotted for absences in a rolling six-month period," (Doc. 73-2 at ¶ 3), Defendant cites to:

- Martin's 30(b)(6) deposition, (Doc. 56 at 28:23–29:4);

- Plaintiff's deposition and the exhibits from her deposition containing Defendant's attendance policy and Plaintiff's attendance records, (Doc. 61 at 120:15–21 & Exs. 10 & 11);

---

[6] Because the Workday records do not support the proposed fact, the Court declines to address Plaintiff's remaining argument that the proposed fact impermissibly contradicts Martin's 30(b)(6) testimony.

- Defendant's counsel's declaration and the attached interrogatory response, (Doc. 73-3 at ¶ 5 & Ex. 1); and,

- Martin's declaration and the attached Workday records (Doc. 63 at ¶ 7; Doc. 63-1).

None of these citations support the proposed fact.

First, Martin's deposition testimony states only that Martin saw "in the documentation, [Plaintiff] had excessive absences that were not approved." (Doc. 56 at 29:1–4). Neither party disputes that Plaintiff had excessive unapproved absences, but the fact that she had such absences is not evidence that Defendant terminated her for having excessive absences. Defendant's citation to Plaintiff's deposition testimony fares no better. Plaintiff testified that she believes that her termination could have been based in part on Defendant "only look[ing] at the attendance." (Doc. 61 at 120:15–21). However, Plaintiff does not have personal knowledge of why Defendant terminated her, and her "speculation in that regard is not sufficient evidence on summary judgment." *Geter v. Schneider Nat'l Carriers, Inc.*, No. 1:20-CV-1148-SCJ-JSA, 2021 WL 8200818, at *33 (N.D. Ga. Dec. 10, 2021) (citing *Riley v. Univ. of Ala. Health Servs. Found., P.C.*, 990 F. Supp. 2d 1177, 1187 (N.D. Ala. 2014) ("A party's mere 'belief' and/or speculation is not based upon personal knowledge and is not competent summary judgment evidence."), *adopted*

*by* 2022 WL 1231706 (N.D. Ga. Mar. 21, 2022), *aff'd*, 2023 WL 7321610 (11th Cir. Nov. 7, 2023). And Exhibits 10 and 11 to Plaintiff's deposition consist of Defendant's attendance policy, (Doc. 60-6), and Plaintiff's attendance records, (Doc. 60-7 at 1–7). Again, these documents show that Plaintiff had excessive unauthorized absences under Defendant's attendance policy but not that she was terminated *because of* her absences or the date on which she was terminated.

Defendant also cites to its interrogatory response, in which it stated that it:

> terminated Plaintiff's employment because she accumulated a number of absences in excess of the termination threshold under its Attendance and Punctuality Policy. . . . Here, [Plaintiff] had accrued double the number of occurrences to justify termination, and had not provided any reason why she should be excused from the attendance policy. Accordingly, [Defendant] terminated [Plaintiff's] employment on May 23, 2021, for Violation of Company Policy due to her attendance.

(Doc. 73-3 at 5). Although a fact asserted for summary judgment may be supported by an interrogatory answer, *see* Fed. R. Civ. P. 56(c)(1)(A), Defendant has attached only a portion of its interrogatory responses so it is not clear whether the responses were verified or who answered on behalf of Defendant. Some courts "have determined that evidence from a [party's] own answers to interrogatories must be based on personal knowledge in order for the answers to interrogatories to be considered." *Portis v. Dillard Store Servs., Inc.*, 148 F. Supp. 2d 1269, 1271 (M.D. Ala.

2001). This is particularly relevant here where none of the other record evidence relied upon by Defendant supports the statement that Defendant "terminated [Plaintiff's] employment on May 23, 2021, for Violation of Company Policy due to her attendance." (Doc. 73-3 at 5). A factual dispute is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). Defendant's interrogatory response is not significantly probative, in light of its own records containing conflicting evidence about the date of Plaintiff's termination, (*see* Doc. 63-1), and the testimony of its 30(b)(6) witness that she does not know who made the decision to terminate Plaintiff or what factors they considered, (Doc. 56 at 67:22–25 ("**Q.** Do you know who actually made the decision that [Plaintiff's] absences would result in her termination, if anyone? **A.** I do not know."), 70:9–71:8 ("**Q.** . . . [I]f I understand you correctly, you don't actually know who made that decision [to terminate Plaintiff]. Is that fair? **A.** I cannot tell you who made the decision in this case, no. **Q.** All right. And would it be fair to say that since you don't know who made the decision you don't know what factors they considered? **A.** Yes.")). Finally, for the same reasons as discussed above, the citation to the Workday records also does not support Defendant's proposed fact about when and why Plaintiff was terminated.

Accordingly, the Court does not consider these two proposed facts, (Doc. 62-2 at ¶ 36; Doc. 73-2 at ¶ 3). There are no undisputed facts before the Court for purposes of the cross-motions for summary judgment establishing whether Plaintiff was terminated on May 23 or May 24, 2021, or the actual reason for her termination.

### ii.      Plaintiff's Attempt to Return to Work

On May 26, 2021, Plaintiff attempted to return to work, but the system would not let her clock in. (Doc. 73-1 at ¶ 27; Doc. 81-1 at ¶ 6). Shantrice Slack, a Human Resources (HR) official for Defendant, looked at the system and discovered Plaintiff had been terminated. (Doc. 73-1 at ¶¶ 28–29; Doc. 74-2 at ¶ 40). Slack told Plaintiff that Defendant does not make accommodations and would not have given her a stool to sit on. (Doc. 60-2 at ¶ 30).[7] This was the first time Plaintiff discussed an accommodation such as a stool with anyone at Defendant. (Doc. 73-2 at ¶ 7).[8] Plaintiff did not tell anyone at Defendant about her disability

---

[7] Defendant argues that this fact is "immaterial to the extent Ms. Slack is not Wal-Mart's corporate representative, current employee, or otherwise authorized to speak on behalf of or bind Wal-Mart." (Doc. 73-1 at ¶ 30).

[8] Plaintiff does not dispute that May 26 was the first time that she *verbally* discussed an accommodation request with Defendant, but she disputes that it was her first accommodation request at all because she submitted requests for leave via her two May doctors' notes. (Doc. 81-1 at ¶ 7; Doc. 74-3 at ¶¶ 28–29).

or discuss her need for accommodation during her employment except by requesting leave via her doctors' notes. (*See* Doc. 61 at 81:3–24, 85:8–86:3, 139:15–140:21).

In her 30(b)(6) testimony, Martin admitted that Sedgwick was in the process of determining whether Plaintiff's absences were protected by the FMLA but halted the process because Plaintiff had been fired. (Doc. 73-1 at ¶¶ 31, 34). Martin testified that she does not know who made the decision to terminate Plaintiff and agreed that she therefore does not know what factors the decisionmaker considered. *Id.* at ¶¶ 38–39; (*see also* Doc. 56 at 70:9–71:8 ("**Q.** . . . [Y]ou don't actually know who made [the] decision [to terminate Plaintiff]. Is that fair? **A.** I cannot tell you who made the decision in this case, no. **Q.** All right. And would it be fair to say that since you don't know who made the decision you don't know what factors they considered? **A.** Yes.")).

Mahsa Taslimigourabpass (an employee of Defendant), Curtis McClester (a former employee of Defendant), and Boban Varghese (the store manager at Defendant's Buford, Georgia store) also testified that they do not know why Plaintiff was terminated. (Doc. 73-1 at ¶ 40; *see also* Doc. 57 at 48:15–49:1 (Taslimigourabpass's testimony that she does not know Plaintiff or why Plaintiff was terminated); Doc. 58 at 28:1–23 (McClester's testimony that he does not

24

remember why Plaintiff was terminated); Doc. 59 at 15:25–16:4 (Varghese's testimony that he does not know Plaintiff or why she was terminated)).

## II.   MOTIONS FOR SUMMARY JUDGMENT

The parties have filed cross-motions for summary judgment in this case. (Docs. 60, 62). As the parties have filed motions for summary judgment as to all of Plaintiff's claims,[9] the Court will consider each claim in turn.

### A.   Summary Judgment Standard

Summary judgment is authorized when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Baas v. Fewless*, 886 F.3d 1088, 1091 (11th Cir. 2018). The movant carries this burden by showing the court "that

---

[9] Plaintiff argues in her partial motion for summary judgment that she is entitled to summary judgment as to her claims of ADA disability discrimination (Count I), FMLA interference (Count III), and FMLA retaliation (Count IV), as well as against a portion of Defendant's Second Affirmative Defense. (Doc. 60-1 at 2). Defendant argues in its motion for summary judgment that it is entitled to summary judgment as to all four of Plaintiff's claims, including her ADA failure-to-accommodate claim (Count II). (Doc. 62-1 at 1–3).

there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. In making its determination, the court must view the evidence and all factual inferences in the light most favorable to the non-moving party. *See Crane v. Lifemark Hospitals, Inc.*, 898 F.3d 1130, 1134 (11th Cir. 2018).

Once the moving party has adequately supported its motion, the non-moving party must come forward with specific facts that demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-moving party is required "to go beyond the pleadings" and to present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). Generally, "[t]he mere existence of a scintilla of evidence" supporting the non-moving party's case is insufficient to defeat a motion for summary judgment; rather, there must be evidence on which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The non-moving party cannot defeat summary judgment by relying upon conclusory assertions. *See Holifield v. Reno,* 115 F.3d 1555, 1564 n. 6 (11th Cir. 1997), *abrogated on other grounds by Lewis v. City of Union City*, 918 F.3d 1213 (11th Cir. 2019) (*en banc*). Rather, "[a] party asserting that a fact…is genuinely disputed must support the assertion by…citing to particular parts of materials in

the record." Fed. R. Civ. P. 56(c)(1); *see also Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (*en banc*) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.").

If a fact is found to be material, the court must also consider the genuineness of the alleged factual dispute. *Anderson*, 477 U.S. at 249–50. A factual dispute is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Id*. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Moreover, for factual issues to be genuine, they must have a real basis in the record. *Matsushita*, 475 U.S. at 587. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id*. at 587 (internal quotation marks omitted). Thus, the standard for summary judgment mirrors that for a directed verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 259 (internal quotation marks omitted).

When considering motions for summary judgment, the court does not make decisions as to the merits of disputed factual issues. *See id*. at 249; *Ryder Int'l Corp. v. First Am. Nat'l Bank*, 943 F.2d 1521, 1523 (11th Cir. 1991). Rather, the court only determines whether there are genuine issues of material fact to be tried. Applicable substantive law identifies those facts that are material and those that are irrelevant. *Anderson*, 477 U.S. at 248. Disputed facts that do not resolve or affect the outcome of a suit will not preclude the entry of summary judgment. *Id*.

Further, the Rule 56 standard "is not affected by the filing of cross-motions for summary judgment: [t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Gaylor v. Greenbriar of Dahlonega Shopping Ctr., Inc.*, 975 F. Supp. 2d 1374, 1382 (N.D. Ga. 2013) (internal quotation marks omitted). "Cross-motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts." *Id*. (citing *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984)).

**B.    ADA Claims**

Plaintiff has brought claims of discriminatory discharge (Count I) and failure to accommodate (Count II) under the ADA. (Doc. 1 at ¶¶ 32-69). Plaintiff

and Defendant have filed cross-motions for summary judgment on Count I, and Defendant has filed a motion for summary judgment as to Count II. The Court will analyze each of Plaintiff's ADA claims in turn.

### 1.    ADA Standards

The ADA prohibits an employer from "discriminat[ing] against a qualified individual on the basis of disability" concerning hiring, promotion, discharge, compensation, training, job application procedures, or "other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The definition of discriminate includes a failure to make reasonable accommodations to the limitations of a qualified individual with a disability unless the employer can demonstrate that the accommodation would impose an undue hardship. 42 U.S.C. § 12112(b)(5)(A). The term "disability" means a physical or mental impairment that substantially limits one or more major life activities, a record of such an impairment, or being regarded as having such an impairment. 42 U.S.C. § 12102(1).

"[T]here are two distinct categories of disability discrimination claims under the ADA: (1) failure to accommodate and (2) disparate treatment." *E.E.O.C. v. Eckerd Corp.*, No. 1:10-CV-2816-JEC, 2012 WL 2568225, at *4 (N.D. Ga. July 2, 2012). Courts examine ADA disparate-treatment claims under the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See*

*Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004). The initial burden is on the plaintiff to establish a prima facie case of discrimination by showing a disability, that she was otherwise qualified to perform her job, and that she was discriminated against based upon the disability. *Id.* The burden then shifts to the defendant to produce a legitimate, non-discriminatory reason for the termination or other adverse employment action. *Id.* If the defendant does so, the plaintiff must then show that this reason is unworthy of credence and a pretext for discrimination. *Id.*

The *McDonnell Douglas* burden-shifting framework, however, is not applicable to reasonable accommodation cases. *See Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1262 (11th Cir. 2007) (noting that for a failure-to-accommodate claim, there are no "subsequent burdens on [defendant] to show that it had any legitimate non-discriminatory reasons for terminating [plaintiff] or on [plaintiff] to establish that these reasons were pretextual" (internal quotation marks omitted)); *Cappetta v. N. Fulton Eye Ctr.*, No. 1:15-CV-3412-LMM-JSA, 2017 WL 5197207, at *20 (N.D. Ga. Feb. 1, 2017) ("For those cases in which an employee claims that an employer violated the ADA by failing to provide a reasonable accommodation for the employee's disability, however, the Eleventh Circuit has held that the *McDonnell Douglas Corp.* burden-shifting framework does not

30

apply."), *adopted by* 2017 WL 5443877 (N.D. Ga. Mar. 7, 2017). To establish a prima facie case with respect to a reasonable accommodation claim, "a plaintiff must demonstrate that: (1) she is disabled; (2) she was a 'qualified individual' when she suffered the adverse employment action; and (3) that she was discriminated against because of her disability by being denied a reasonable accommodation to allow her to keep working." *Cappetta*, 2017 WL 5197207, at * 25; *see also Holly*, 492 F.3d at 1262-63.

### 2.    Disability Discrimination (Count I)

In her motion for summary judgment, Plaintiff argues that she has established a prima facie case of disability discrimination by showing that she was disabled, was a qualified individual, and was subjected to unlawful discrimination (termination) based on her disability or her need for accommodation. (Doc. 60-1 at 13–19). She contends that Defendant has not met its rebuttal burden to produce evidence that her termination was for a legitimate, non-discriminatory reason because Defendant cannot even identify the decisionmaker who made the decision to terminate her. *Id*. at 5–13. In response, Defendant argues that Plaintiff cannot establish the "qualified individual" element of her prima facie case. (Doc. 73 at 3– 5). Defendant asserts that, even if Plaintiff can establish a prima facie case, Defendant has produced a non-discriminatory reason for her termination—her

excessive absences—and Plaintiff has not shown that its reason is pretextual. *Id*. at 9-14.

In its cross-motion for summary judgment, Defendant argues that Plaintiff cannot establish the second and third elements of her prima facie case because she was not a qualified individual and there is no evidence that Defendant knew she was disabled or perceived her to be disabled prior to her termination. (Doc. 62-1 at 14–18). Defendant also argues that Plaintiff cannot refute its legitimate, non-discriminatory reason for her termination or show that that reason was pretext. *Id*. at 18–21. In response to Defendant's cross-motion, Plaintiff argues that she has established at least a genuine issue of material fact as to the elements of her prima facie case, that Defendant's argument about her poor attendance should be addressed at the non-discriminatory reason/pretext stage of the analysis, that Defendant has failed to meet its rebuttal burden regarding a non-discriminatory reason for her termination, and that she has at least established a genuine issue of material fact as to pretext. (Doc. 74 at 5–20). Plaintiff and Defendant each filed reply briefs in support of their respective cross-motions, reiterating the claims from their initial briefs. (Doc. 81; Doc. 80).

### i.      Prima Facie Case

Courts examine ADA disparate-treatment claims under the burden-shifting framework set out in *McDonnell Douglas. See Cleveland*, 369 F.3d at 1193. The initial burden is on Plaintiff to establish a prima facie case of discrimination by showing a disability (or that she was regarding as having a disability), that she was otherwise qualified to perform her job, and that she was discriminated against based upon the disability. *Id*. The burden then shifts to Defendant to produce a legitimate, non-discriminatory reason for the termination or other adverse employment action. *Id.* If Defendant does so, Plaintiff must then show that this reason is unworthy of credence and a pretext for discrimination. *Id.*

### a.      Disability

Regarding the first element of Plaintiff's prima facie case, "[a]n individual has a disability if she has 'a physical or mental impairment that substantially limits one or more of [her] major life activities.'" *Danielle-DiSerafino v. Dist. Sch. Bd. of Collier Cnty.,* 756 F. App'x 940, 943 (11th Cir. 2018) (quoting 42 U.S.C. § 12102(1) (second alteration in original)). Major life activities include performing manual tasks, walking, standing, lifting, bending, speaking, concentrating, thinking, communicating, and working. 42 U.S.C. § 12102(2)(A). Plaintiff suffers from pedal edema, which causes pain and swelling in her feet and ankles and impairs her

33

ability to stand and walk. (Doc. 73-1 at ¶¶ 6–8). Defendant does not dispute that Plaintiff's pedal edema constitutes a disability under the ADA. (*See* Doc. 62-1 at 17).

### b.      Qualified Individual

The second prong of Plaintiff's prima facie case asks whether she is a qualified individual. A qualified individual is someone who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds." *Holly*, 492 F.3d at 1256 (quoting 42 U.S.C. § 12111(8)). "Courts have cautioned that '[w]hether a particular job function is essential is evaluated on a case-by-case basis by examining a number of factors' and that 'the question of whether a job function is essential is generally not suitable for resolution on a motion for summary judgment.'" *Change v. Midtown Neurology, P.C.*, No. 1:19-CV-885-SCJ-AJB, 2021 WL 2483368, at *20 (N.D. Ga. Feb. 3, 2021) (quoting *Jernigan v. Bellsouth Telecomms.*, 17 F. Supp. 3d 1317, 1322 (N.D. Ga. 2014)), *adopted by* 2021 WL 2492470 (N.D. Ga. Mar. 26, 2021), *aff'd* No. 21-11405, 2022 WL 2352339 (11th Cir. June 29, 2022). "'Essential functions' are the fundamental job duties of a position that an individual with a disability is **actually required** to perform." *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000) (emphasis added). And the ADA provides that, "consideration shall be given to

the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8); *see also Earl*, 207 F.3d at 1365. However, while the "employer's view is entitled to substantial weight in the calculus, this factor alone may not be conclusive." *Holly*, 492 F.3d at 1258 (internal quotation marks and alteration omitted).

Defendant argues that regular attendance was an essential function of Plaintiff's job and that she was not a qualified individual due to her numerous unscheduled absences in 2021. (Doc. 62-1 at 15–16). Defendant's Attendance and Punctuality Policy states that "[r]egular and punctual attendance is a required and essential function of each associate's job," (Doc. 60-6 at 1), and Plaintiff admitted that attendance was important for her job, (Doc. 74-2 at ¶ 27). Defendant's Attendance Policy provides for assignment of points whenever an employee misses work without authorization and states that employees who accumulate five or more points in a rolling six-month period will be subject to termination. (Doc. 73-1 at ¶ 14; Doc. 74-2 at ¶¶ 18, 21). It is undisputed that Plaintiff accrued 11 attendance points—nearly double the amount allowed under Defendant's Attendance Policy—between January 1, 2021, and May 9, 2021. (Doc. 73-1 at ¶¶

15–16; *see also* Doc. 60-7 at 6–7). However, it is also undisputed that Plaintiff remained employed for approximately another month after she reached five attendance points on April 22, 2021, (Doc. 73-1 at ¶ 15), and Defendant did not discipline or reprimand Plaintiff for her absenteeism or discuss her absences with her in any way prior to her termination, (Doc. 73-1 at ¶ 18).

Here, Defendant's argument that Plaintiff is not a qualified individual because she cannot perform the allegedly essential function of regular attendance overlaps entirely with its alleged reason for terminating Plaintiff. And, as the Court discusses below, there is a clear question of fact as to Defendant's alleged non-discriminatory reason for terminating Plaintiff. Viewing the evidence in the light most favorable to Plaintiff, there is a genuine question of fact as to whether regular attendance (fewer than five attendance points in a rolling six-month period) is an essential function that Plaintiff was actually required to perform (and, therefore, whether Plaintiff was a "qualified individual" within the meaning of the ADA). *See Earl*, 207 F.3d at 1365; *see also Calvo v. Walgreens Corp.*, 340 F. App'x 618, 623 (11th Cir. 2009) (holding that there was a genuine issue of material fact as to whether lifting was an essential function where there was evidence that the plaintiff had been unable to lift for four years but her manager believed she was performing her job "fine"); *Quitto v. Bay Colony Golf Club, Inc.*, No. 2:06-CV-286-

36

FtM-29DNF, 2007 WL 2002537, at *5–6 (M.D. Fla. July 5, 2007) (finding that there was a question of disputed fact as to whether the plaintiff was qualified where the job description required him to lift up to 60 pounds but there was "evidence to support plaintiff's position that the functions listed in the job description are not all mandatory"). Plaintiff has cited to specific admissible facts that, despite her accumulating nearly double the number of allowed attendance points, Defendant did not enforce its attendance policy. Indeed, Defendant did not discipline Plaintiff in any way or even discuss her attendance. Defendant's argument regarding the essential functions of Plaintiff's position may ultimately win the day, but a jury could conclude that Defendant did not require Plaintiff to have regular attendance and that Plaintiff was a qualified individual.

### c.    Discriminated Against

The third prong of the prima facie case under *McDonnell Douglas* requires Plaintiff to show that she "was subjected to unlawful discrimination because of her disability." *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000). This required showing seems to suggest that, as part of her prima facie case, a plaintiff must prove the ultimate question underlying her claim: whether the defendant unlawfully discriminated against her. However, in practice, "the Eleventh Circuit has simply required a plaintiff to present facts from which an inference of

discrimination can be made (as is true in all other discrimination cases)." *Brandon v. Lockheed Martin Aeronautical Sys.*, 393 F. Supp. 2d 1341, 1346 (N.D. Ga. 2005); *see also Andrews v. City of Hartford*, 700 F. App'x 924, 927 (11th Cir. 2017) (per curiam) (requiring plausible facts showing disability was a "determinative factor" in the termination decision or "otherwise giving rise to an inference of disability discrimination"). "Thus, the third prong of a prima facie case only requires a showing that an adverse employment action which could be actionable under the ADA occurred, i.e., facts from which an inference of discrimination can be made." *Gilio v. Lowe's Home Ctrs.*, No. 4:17-CV-132-HLM-WEJ, 2019 WL 13268648, at *18 (N.D. Ga. May 20, 2019), *adopted by* 2019 WL 13268763 (N.D. Ga. Sept. 19, 2019).

Here, Plaintiff's termination constitutes an adverse action. Plaintiff argues that the suspicious timing of her termination (which Plaintiff alleges occurred shortly after she submitted the May 22 and May 24 doctors' notes,[10] which identified her disability and requested leave and other accommodations), coupled with HR employee Slack's comment that Defendant does not make accommodations,[11] indicate that Plaintiff's disability and/or need for

---

[10] Recall that the Court is referencing these doctors' notes by the date they were made, not the dates on which the notes were allegedly brought to Defendant.

[11] Slack learned of Plaintiff's termination at the same time that Plaintiff did,

38

accommodation motivated her termination. (Doc. 60-1 at 16–19). Defendant argues, however, that Plaintiff cannot establish the third prong of her prima facie case because she cannot set forth evidence that Defendant knew of her disability or perceived her to be disabled when it terminated her. (Doc. 62-1 at 17–18). Plaintiff's and Defendant's arguments turn on when Plaintiff submitted her doctors' notes, when Plaintiff was terminated, and whether the (unknown) decisionmaker was aware of Plaintiff's disability—all of which are clearly disputed issues of fact.

The parties dispute whether Plaintiff's May 22 doctor's note was delivered to Defendant on May 22 or 24, 2021, and Plaintiff's deposition testimony is unclear on this point. (*Compare* Doc. 61 at 139:15-140:3 (Plaintiff's testimony that the doctor's note that referenced her diagnosis was provided to Defendant on May 22, 2021), *and* Doc. 74-14 at ¶¶ 4–8 (Plaintiff's husband's declaration that he brought the May 22 doctor's note to one of Defendant's managers on May 22 because the note asked for the 22nd and 23rd off, and he and Plaintiff wanted to make sure those absences were excused), *with* Doc. 61 at 140:10-17 (Plaintiff's testimony that

---

on May 26, 2021, when Plaintiff attempted to return to work. (Doc. 73-1 at ¶¶ 27–29; Doc. 74-2 at ¶ 40; Doc. 81-1 at ¶ 6). There is no evidence that Slack was a decisionmaker with regard to Plaintiff's termination.

she's "guessing it was the 24th" when her husband brought her doctor's note to Sandy), *and* Doc. 56 at 51:3–13 (Monique Martin's 30(b)(6) testimony for Defendant that she did not see any "electronic footprint" in Defendant's records showing that Plaintiff called in her May 22 and May 23 absences to Defendant)).

The May 22 doctor's note identified Plaintiff's disability as pedal edema and requested medical leave on May 22 and 23. (Doc. 73-1 at ¶ 22; Doc. 60-7 at 8). The May 24 doctor's note requested additional leave, with Plaintiff returning to work on May 26, 2021, along with limited time standing or walking and a restriction to sitting for 75 percent of Plaintiff's work hours for four weeks. (Doc. 73-1 at ¶ 25; Doc. 60-7 at 9). On May 24, 2021, Plaintiff submitted FMLA leave paperwork, including her May 2021 doctors' notes, to Sedgwick, requesting medical leave to cover May 22 through May 25, 2021. (Doc. 81-1 at ¶ 5; Doc. 74-2 at ¶ 37; Doc. 81-1 at ¶ 10). Plaintiff did not request FMLA leave from Sedgwick at any time before May 24, 2021. (Doc. 81-1 at ¶ 9; Doc. 61 at 117:9–12). The documentation from Sedgwick (showing that Plaintiff reported her leave request to Sedgwick on May 24, 2021) supports Martin's testimony that Defendant was not aware of Plaintiff's leave request until May 24, 2021, when the Sedgwick request reached Defendant's inbox. (Doc. 81-1 at ¶ 11; Doc. 64 at 4).

The date(s) the Defendant received Plaintiff's doctors' notes identifying her disability and requesting leave are important because Defendant alleges that it was not aware of the notes until May 24, 2021—**after** Defendant alleges that it terminated Plaintiff on May 23, 2021. *See Lakes v. Fulton Cnty. Sch. Dist.*, No. 1:17-CV-4685-WMR-CMS, 2019 WL 13131392, at *11 (N.D. Ga. Aug. 22, 2019) (finding, as to a failure-to-accommodate claim, that "[t]o obtain a judgment as a matter of law, Plaintiff must also prove . . . that the person who made the decision . . . actually knew about Plaintiff's 'disability'"), *adopted by* 2019 WL 13131391 (N.D. Ga. Nov. 26, 2019). However, as discussed extensively above, there are no undisputed facts before the Court establishing whether Plaintiff was terminated on May 23 or May 24, who made the decision to terminate Plaintiff, and whether that decisionmaker was aware of Plaintiff's disability and requests for leave. *See supra* Section I.C.5.a. The parties offer alternative versions of the facts, and the Court may not determine which version is more credible at summary judgment. *See Anderson*, 477 U.S. at 249.

For Plaintiff to win on her disability discrimination claim (Count I) at the summary judgment stage, there cannot be fact issues as to any of the elements of her prima facie case. But, as discussed above, there are clear and obvious questions of material fact as to: (1) whether regular attendance was an essential function of

Plaintiff's job such that she was not a qualified individual and (2) whether the decisionmaker had actual knowledge of Plaintiff's disability prior to her termination such that an inference can be drawn that Defendant discriminated against her based on her disability. Thus, I **RECOMMEND** that Plaintiff's motion for partial summary judgment, (Doc. 60), be **DENIED** as to Count I.

### ii.      Legitimate Non-Discriminatory Reason

Regarding Defendant's motion for summary judgment as to Count I, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for Plaintiff's termination because Defendant does not dispute the first element of Plaintiff's prima facie case, and Plaintiff has, at a minimum, created a fact dispute as to the second and third elements of her prima facie case. *See Cleveland*, 369 F.3d at 1193. "This burden is 'exceedingly light.'" *Gilio*, 2019 WL 13268648, at *19 (quoting *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983)). However, the Eleventh Circuit "has squarely held that an employer may not satisfy its burden of production by offering a justification which the employer either did not know or did not consider at the time the decision was made." *Turnes v. AmSouth Bank, NA*, 36 F.3d 1057, 1061–62 (11th Cir. 1994) (holding, in a Title VII case, that the "district court erred in . . . allowing an employer to meet the [*McDonnell Douglas*] intermediate burden with a hypothetical justification for its

decision");[12] *see also Change*, 2022 WL 2352339, at *3 (applying *Turnes* in an ADA case).

Here, it is undisputed that Defendant does not know who made the decision to terminate Plaintiff or what factors that decisionmaker considered. (Doc. 73-1 at ¶¶ 38–39; *see also* Doc. 56 at 70:9–71:8). "Without knowing who made the decision, it is impossible to know whether that person actually relied on the asserted reasons. . . . That prevents the Court from concluding Defendant has satisfied its rebuttal burden under *McDonnell Douglas*." *Moore v. Cobb Cnty. Sch. Dist.*, No. 1:19-CV-4174-MLB, 2021 WL 3661223, at *9 (N.D. Ga. Aug. 18, 2021) (finding, as to an FMLA retaliation claim, that the employer did not meet its rebuttal burden where was a genuine dispute of fact as to who made the adverse decision). As in *Moore*, the fact that there is no evidence showing who made the decision to terminate Plaintiff prevents the Court from concluding that Defendant has met its rebuttal burden to articulate a legitimate, non-discriminatory reason

---

[12] The *McDonnell Douglas* burden-shifting framework is applied to discrimination claims under both Title VII and the ADA, as well as FMLA retaliation claims. *See Herren v. La Petite Academy, Inc.*, 820 F. App'x 900, 904 (11th Cir. 2020).

for Plaintiff's termination. Accordingly, I **RECOMMEND** that Defendant's motion

for summary judgment, (Doc. 62), be **DENIED** as to Count I.[13]

### 3.      Failure to Accommodate (Count II)

In its motion for summary judgment, Defendant argues that Plaintiff's

failure-to-accommodate claim is time-barred to the extent that it is based on her

December 2020 doctor's note or any other conduct that occurred before May 21,

2021. (Doc. 62-1 at 10–11).[14] Defendant asserts that Plaintiff testified that she did

not request any accommodations during her employment. *Id*. at 11–12. Defendant

argues that, even if she requested an accommodation, Plaintiff cannot show that

she was a qualified individual under the ADA. *Id*. at 14–16. In response, Plaintiff

argues that she has established at least a genuine issue of material fact that she

requested reasonable accommodations for her disability prior to her termination

---

[13]  Having reached this conclusion, the Court need not discuss the third step of the *McDonnell Douglas* burden-shifting analysis (pretext).

[14]  In her complaint, Plaintiff alleges that she requested accommodations in December of 2020. (Doc. 1 at ¶ 58). Plaintiff does not address Defendant's argument that any failure-to-accommodate claim based on actions prior to May 21, 2021 is time-barred, and she relies only on her May 22 and 24 doctors' notes as accommodation requests. (*See* Doc. 74). Therefore, it appears that Plaintiff has abandoned any claim that her failure-to-accommodate count was based on requests for accommodations made in December of 2020.

through her May 22 and May 24 doctors' notes and that Defendant terminated her instead of accommodating her disability. (Doc. 74 at 21–25).

To establish a prima facie case with respect to a reasonable accommodation claim, "a plaintiff must demonstrate that: (1) she is disabled; (2) she was a 'qualified individual' when she suffered the adverse employment action; and (3) that she was discriminated against because of her disability by being denied a reasonable accommodation to allow her to keep working." *Cappetta*, 2017 WL 5197207, at *25; *see also Holly*, 492 F.3d at 1262-63 (noting that for a failure-to-accommodate claim, there are no "subsequent burdens on [defendant] to show that it had any legitimate non-discriminatory reasons for terminating [plaintiff] or on [plaintiff] to establish that these reasons were pretextual" (internal quotation marks omitted)).

As discussed above with respect to Plaintiff's discriminatory discharge claim, Defendant does not dispute that Plaintiff is disabled. (*See* Doc. 62-1 at 10–16). Because the Court has already found that Plaintiff raises a genuine issue of material fact as to whether she is a qualified individual, *see supra* Section II.B.2.i.b, the only remaining question before the Court is the third prima facie element: namely, whether Defendant discriminated against Plaintiff by failing to reasonably accommodate her.

"The ADA requires an employer to make reasonable accommodations to an otherwise qualified employee with a disability, 'unless doing so would impose an undue hardship.'" *Frazier-White v. Gee*, 818 F.3d 1249, 1255 (11th Cir. 2016) (internal quotation marks and alteration omitted). "An accommodation is only reasonable if it allows the disabled employee to perform the essential functions of the job in question." *Id.* "The employee has the burden of identifying an accommodation and demonstrating that it is reasonable." *Id.* "An employer's duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made." *Cazeau v. Wells Fargo Bank, N.A.*, 614 F. App'x 972, 982 (11th Cir. 2015) (internal quotation marks omitted).

Here, there is again a dispute of fact turning on when Plaintiff submitted her doctors' notes and when Plaintiff was terminated. As discussed above, the parties dispute whether Plaintiff's May 22 doctor's note, which identified Plaintiff's disability as pedal edema and requested medical leave, was delivered to Defendant on May 22 or 24, 2021. The May 24 doctor's note requested additional leave, with Plaintiff returning to work on May 26, 2021, along with limited time standing or walking and a restriction to sitting for 75 percent of Plaintiff's work hours for four weeks. (Doc. 73-1 at ¶ 25; Doc. 60-7 at 9). Defendant alleges that it was not aware of the two May doctors' notes until May 24, 2021 — **after** Defendant

alleges that it terminated Plaintiff on May 23, 2021. *See Lakes*, 2019 WL 13131392, at *11 (finding, as to a failure-to-accommodate claim, that "[t]o obtain a judgment as a matter of law, Plaintiff must also prove . . . that the person who made the decision . . . actually knew about Plaintiff's 'disability.'"). However, there are no undisputed facts before the Court establishing whether Plaintiff was terminated on May 23 or May 24, who made the decision to terminate Plaintiff, and whether that decisionmaker was aware of Plaintiff's disability and requests for accommodation. The parties offer alternative versions of the facts, and the Court may not determine which version is more credible at summary judgment. *See Anderson*, 477 U.S. at 249. Accordingly, I **RECOMMEND** that Defendant's motion for summary judgment, (Doc. 62), be **DENIED** as to Count II.

### C.    FMLA Claims

Plaintiff has also brought claims of interference (Count III) and retaliation (Count IV) under the FMLA. (Doc. 1 at ¶¶ 70–97). Plaintiff and Defendant have filed cross-motions for summary judgment as to each count, and the Court will analyze each of Plaintiff's FMLA claims in turn. For ease of analysis, the Court will analyze Plaintiff's FMLA retaliation claim first.

### 1.   FMLA Standards

The FMLA grants an eligible employee the right to take up to twelve workweeks of unpaid leave during any twelve-month period for any one or more of several reasons, including "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D); *see also Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006). A "serious health condition" means "an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care . . . or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). An employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise" any right provided for under the FMLA (interference claims), nor may an employer "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA (retaliation claims). 29 U.S.C. §§ 2615(a)(1) and (2).

### 2.   Retaliation (Count IV)

In her cross-motion for summary judgment, Plaintiff argues that she has established a prima facie case of FMLA retaliation. (Doc. 60-1 at 20–24). She argues that she submitted two doctors' notes that, combined, requested medical leave for May 22nd through May 25th of 2021, and that she was eligible for FMLA benefits.

48

*Id.* at 20-22. Plaintiff asserts that the close temporal proximity between her leave requests and her termination establish a causal connection. *Id.* at 22–24. Plaintiff argues that Defendant fails to meet its rebuttal burden of showing a legitimate, non-retaliatory reason for Plaintiff's termination. *Id.* at 4–13. In response, Defendant argues that Plaintiff cannot establish a prima facie case of FMLA retaliation because she did not seek leave until after Defendant had terminated her employment. (Doc. 73 at 5-8). Defendant also argues that it lawfully terminated Plaintiff for a reason other than her requested leave—namely, due to her excessive absenteeism. *Id.* at 8.

In its cross-motion for summary judgment, Defendant argues that it is entitled to summary judgment on Plaintiff's FMLA retaliation claim because she did not request leave until after her employment had been terminated and because she had enough unauthorized absences to be terminated regardless of her request for FMLA leave. (Doc. 62-1 at 23–24). In response, Plaintiff argues that she has established genuine issues of material fact as to whether her May 2021 doctors' notes were protected activity and whether there was a causal connection between her termination and her requests for leave. (Doc. 74 at 26–31). She asserts that Defendant has failed to meet its rebuttal burden and that its non-retaliatory justification for her termination is pretextual. *Id.* at 31–33.

Where an employee alleges FMLA retaliation without direct evidence of an employer's retaliatory intent, courts "apply the burden shifting framework established in" *McDonnell Douglas*. *Batson v. Salvation Army*, 897 F.3d 1320, 1328–29 (11th Cir. 2018). "To establish a prima facie case of retaliation under [the FMLA], an employee must demonstrate (1) that she engaged in statutorily protected conduct, (2) that she suffered an adverse employment action, and (3) that a causal connection exists between the two." *Id.* at 1329. "Once the employee has established a prima facie case, the burden shifts to the employer to articulate a nondiscriminatory reason for the adverse action." *Id.* "If the employer does so, the burden shifts back to the employee to demonstrate that the employer's proffered reason was pretextual by presenting evidence sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Id.* (internal quotation marks omitted).

### i.      Prima Facie Case

As with Plaintiff's ADA claims, there are genuine issues of material fact that foreclose summary judgment as to Plaintiff's FMLA retaliation claim. Defendant does not dispute prong two of the prima face case—that Plaintiff suffered an adverse employment action. Defendant also does not dispute that Plaintiff

satisfied prong one of the prima facie case by engaging in statutorily protected conduct when she submitted an FMLA leave request to Sedgwick on May 24, 2021. (Doc. 62-1 at 21–22; Doc. 73 at 5–7).

However, Plaintiff argues, and the Court agrees, that there is at least a dispute of fact as to whether her submission of her May 22 and May 24 doctors' notes to management also constituted protected conduct. (Doc. 74 at 27–29). "An employee's notice of her need for FMLA leave must satisfy two criteria—timing and content—both of which differ depending on whether the need for leave is foreseeable or unforeseeable." *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1195 (11th Cir. 2015).[15] As to timing, "an employee [whose need for leave is unforeseeable] must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a). With respect to the content of the employee's notice, the Eleventh Circuit has held that, "[a]s a general rule, an employee need not explicitly mention the FMLA when

---

[15] The parties do not directly discuss whether Plaintiff's need for FMLA leave should be viewed as foreseeable or unforeseeable. In *White*, the Eleventh Circuit concluded that "an employee's need for leave is foreseeable if it is based on planned medical treatment." 789 F.3d at 1196. Here, there is no evidence or argument that Plaintiff's need for leave due to her pedal edema was based on planned medical treatment. Thus, the Court finds that Plaintiff's need for leave was unforeseeable. *See id.*

giving notice to her employer." *White*, 789 F.3d at 1196; *see also Cruz v. Publix Super Mkts., Inc.*, 428 F.3d 1379, 1383 (11th Cir. 2005) ("An employee is not required to assert expressly her right to take leave under the FMLA."). The Eleventh Circuit has also held that, "[i]f the need for leave is *unforeseeable,* an employee need only 'provide sufficient information for [her] employer to reasonably determine whether the FMLA may apply to the leave request.'" *White*, 789 F.3d at 1196 (quoting 29 C.F.R. § 825.303(b)). Because Plaintiff's need for leave was unforeseeable, she was required to give notice only as early as was practicable, *see* 29 C.F.R. § 825.303(a), and her notice had to contain only "sufficient information for [Defendant] to reasonably determine whether the FMLA may apply to the leave request," *id.* at § 825.303(b).

"When the need for leave is not foreseeable, an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 C.F.R. § 825.303(c). Defendant argues that, as to the May 2021 doctors' notes, Plaintiff failed to comply with its FMLA Leave of Absence Policy that requires employees to submit leave requests to Sedgwick and their manager as soon as possible for unforeseen requests. (Doc. 62-1 at 22). Defendant's FMLA Leave of Absence policy directs employees to submit leave requests to their "manager and Sedgwick if the need for leave is

foreseeable" and states that employees "must give notice as soon as possible" if the need for leave is not foreseeable. (Doc. 74-6 at 7; *see also* Doc. 74-3 at ¶¶ 25–26). The FMLA Leave of Absence policy does not state what happens if an employee submits a request only to a manager or Sedgwick, rather than to both. (Doc. 74-3 at ¶ 26). However, Defendant's Attendance and Punctuality policy directs employees in need of an absence longer than three scheduled shifts to discuss the matter with their supervisor or HR representative, who will "assist [the employee] with the leave application process by directing [the employee] to Sedgwick to request a leave of absence." (Doc. 60-6 at 6). Thus, there is at least a dispute of fact as to whether under Defendant's policies, Plaintiff's submission of her May 22 doctor's note and leave request to a manager was sufficient to put Defendant on notice of Plaintiff's need for potentially FMLA-qualifying leave.

There is also a dispute of fact as to the third prong of Plaintiff's prima facie case—whether a causal connection exists between her protected conduct and her termination based on close temporal proximity. Defendant argues that Plaintiff was terminated on May 23, 2021, before she first requested leave with Sedgwick on May 24, 2021. (Doc. 62-1 at 22). Plaintiff argues that there is no evidence as to the date of her termination, and that she first requested leave on May 22, 2021,

when her husband brought her May 22 doctor's note requesting medical leave to a manager. (Doc. 74 at 30–31).

However, as discussed above, there is a dispute of fact as to whether Plaintiff's May 22 doctor's note was delivered to Defendant on May 22 or 24, 2021. (*Compare* Doc. 61 at 139:15-140:3 (Plaintiff's testimony that the doctor's note that referenced her diagnosis was provided to Defendant on May 22, 2021), *and* Doc. 74-14 at ¶¶ 4–8 (Plaintiff's husband's declaration that he brought the May 22 doctor's note to one of Defendant's managers on May 22 because the note asked for the 22nd and 23rd off, and he and Plaintiff wanted to make sure those absences were excused), *with* Doc. 61 at 140:10-17 (Plaintiff's testimony that she's "guessing it was the 24th" when her husband brought her doctor's note to Sandy), *and* Doc. 56 at 51:3–13 (Monique Martin's 30(b)(6) testimony for Defendant that she did not see any "electronic footprint" in Defendant's records showing that Plaintiff called in her May 22 and May 23 absences to Defendant)). And there are no undisputed facts before the Court establishing the date of Plaintiff's termination or the decisionmaker. *See supra* Section I.C.5.a. The parties offer alternative versions of the facts regarding when Plaintiff submitted her leave requests and when she was terminated, and the Court may not determine which version is more credible at summary judgment. *See Anderson*, 477 U.S. at 249.

54

For Plaintiff to win on her FMLA retaliation claim (Count IV) at the summary judgment stage, there cannot be fact issues as to any of the elements of her prima facie case. But, as discussed above, there are clear and obvious questions of material fact as to: (1) whether submitting her doctors' notes to management was sufficient to constitute protected activity and (2) whether Plaintiff submitted her leave requests prior to her termination. Thus, I **RECOMMEND** that Plaintiff's motion for partial summary judgment, (Doc. 60), be **DENIED** as to Count IV.

### ii.        Legitimate Non-Retaliatory Reason

As to Defendant's motion for summary judgment on Count IV, because Defendant does not dispute the second element of Plaintiff's prima facie case and Plaintiff has, at a minimum, created a fact dispute as to the first and third elements, the burden shifts to Defendant to articulate a legitimate, non-retaliatory reason for Plaintiff's termination. *See Moore*, 2021 WL 3661223, at *9. It is undisputed that Defendant does not know who made the decision to terminate Plaintiff or what factors that decisionmaker considered. (Doc. 73-1 at ¶¶ 38–39; *see also* Doc. 56 at 70:9–71:8). "Without knowing who made the decision, it is impossible to know whether that person actually relied on the asserted reasons. . . . That prevents the Court from concluding Defendant has satisfied its rebuttal burden under *McDonnell Douglas*." *Moore*, 2021 WL 3661223, at *9 (finding, as to an FMLA

55

retaliation claim, that the employer did not meet its rebuttal burden where was a genuine dispute of fact as to who made the adverse decision). As in *Moore*, the fact that there is no evidence showing who made the decision to terminate Plaintiff prevents the Court from concluding that Defendant has met its rebuttal burden to articulate a legitimate, non-retaliatory reason for Plaintiff's termination. Accordingly, I **RECOMMEND** that Defendant's motion for summary judgment, (Doc. 62), be **DENIED** as to Count IV.

### 3.   Interference (Count III)

In her cross-motion for summary judgment, Plaintiff argues that she was eligible for FMLA benefits, but Defendant interfered with her FMLA rights by using her May 22 absence (which was subject to a leave request) against her as an attendance point, refusing to consider her request that certain absences be FMLA-protected leave, and failing to provide her with written notice of her obligation to provide medical certification. (Doc. 60-1 at 20-22, 24–26). In response, Defendant argues that Plaintiff cannot show that she requested FMLA leave prior to Defendant terminating her employment. (Doc. 73 at 5–8). Defendant also argues that it lawfully terminated Plaintiff for a reason other than her requested leave—namely, due to her excessive absenteeism. *Id*. at 8.

In its cross-motion for summary judgment, Defendant argues that it is entitled to summary judgment on Plaintiff's FMLA interference claim because she did not follow Defendant's internal notice policies and was therefore not entitled to FMLA protection. (Doc. 62-1 at 21–22). Defendant argues that Plaintiff's first and only request for FMLA leave was submitted to Sedgwick on May 24, 2021, the day after her termination. *Id*. at 22–23. In response, Plaintiff argues that her first leave request was her May 22 doctor's note, which she submitted prior to the alleged date of her termination, and, further, that there is no admissible evidence that she was terminated on May 23, 2021. (Doc. 74 at 33–35).

In an FMLA interference claim, "an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act." *Jones v. Gulf Coast Health Care of Del., LLC*, 854 F.3d 1261, 1267 (11th Cir. 2017) (internal quotation marks omitted). "An employee need not allege that his employer intended to deny the right; the employer's motives are irrelevant." *Tanner v. Stryker Corp. of Mich.*, -- F.4th --, No. 22-14188, 2024 WL 3058746, at *10 (11th Cir. June 20, 2024) (internal quotation marks omitted). "Where the claim is based on an employee's termination, however, as [Plaintiff's] claim is here, an employer may affirmatively defend against the claim by establishing that it would have terminated the employee regardless of her request for or use of FMLA leave."

57

*Batson*, 897 F.3d at 1331; *see also Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1236 (11th Cir. 2010) ("[A]n employee can be dismissed, preventing her from exercising her right to commence FMLA leave, without thereby violating the FMLA, if the employee would have been dismissed regardless of any request for FMLA leave.").

The Eleventh Circuit has held that, at summary judgment, "the analyses for an FMLA interference claim based on an employee's termination and an FMLA retaliation claim are essentially the same: [the court] ask[s] whether the evidence, viewed in the light most favorable to the non-moving party, establishes as a matter of law that the employer would have terminated the employee regardless of her request for or use of FMLA leave." *Batson*, 897 F.3d at 1331–32. Here, for the same reasons as discussed for Plaintiff's FMLA retaliation claim, there are genuine disputes of fact regarding who terminated Plaintiff's employment, when Plaintiff was terminated, and whether her termination was before or after she submitted requests for leave. Thus, there is also a genuine dispute of material fact as to whether Plaintiff would have been terminated regardless of her request for FMLA leave. *See Batson*, 897 F.3d at 1331–32.

Accordingly, I **RECOMMEND** that Plaintiff's motion for summary judgment, (Doc. 60), be **DENIED** as to Count III and that Defendant's cross-motion for summary judgment, (Doc. 62), also be **DENIED** as to this claim.

### D.    "Same Decision" Affirmative Defense

Plaintiff also moves for summary judgment on Defendant's second affirmative defense, as applied to her FMLA retaliation claim and ADA claims. (Doc. 60-1 at 27–29). Defendant's second affirmative defense states:

> At all times relevant to this action, the employment decisions at issue were made by Defendant for legitimate, nondiscriminatory and nonretaliatory business reasons; were undertaken in good faith and in compliance with all applicable laws. Alternatively, **Defendant would have made the same personnel decisions despite any alleged retaliatory motive.**

(Doc. 8 at 15–16 (emphasis added)). Plaintiff argues that this "same decision" defense is inapplicable here because ADA claims and FMLA retaliation claims require "but-for" causation. (Doc. 60-1 at 28–29). Defendant responds that Plaintiff has not cited authority that Defendant cannot assert a "same decision defense," and instead she summarily concludes that a "same decision" defense is barred for claims involving "but for" causation. (Doc. 73 at 8–9 & n. 2). In reply, Plaintiff argues that, contrary to Defendant's claim, she cited to Eleventh Circuit authority

in her initial argument that no "same decision" affirmative defense can exist where the statute at issue requires "but for" causation. (Doc. 81 at 13–14).

The Court agrees with Plaintiff that the "same decision" affirmative defense is unavailable for claims that require "but for" causation, as Plaintiff's ADA claims and FMLA retaliation claim do here. The Eleventh Circuit has recently confirmed that the ADA imposes a "but for" causation standard. *Akridge v. Alfa Ins. Cos.*, 93 F.4th 1181, 1192–93 (11th Cir. 2024) ("[A] plaintiff . . . pursu[ing] an ADA discrimination claim . . . must show but-for causation."); *see also Holly*, 492 F.3d at 1263 n.17 (holding that a plaintiff bringing an ADA failure-to-accommodate claim "bears the burden of showing . . . that, but for [the defendant's] failure to accommodate his disability, he would not have been terminated"). FMLA retaliation claims also require "but for" causation. *Lapham v. Walgreen Co.*, 88 F.4th 879, 890–93 (11th Cir. 2023) ("[W]e hold that the proper causation standard for FMLA . . . retaliation claims is but-for causation."), *petition for cert. filed* No. 23-1283 (U.S. June 7, 2024). And the Eleventh Circuit has held that where a plaintiff "must establish 'but for' causality, no 'same decision' affirmative defense can exist: the employer either acted 'because of' the plaintiff's [protected trait] or it did not." *Mora v. Jackson Mem'l Found., Inc.*, 597 F.3d 1201, 1203–04 (11th Cir. 2010) (so

holding in a case considering the Age Discrimination in Employment Act, which also requires "but for" causation).

Because Plaintiff's ADA claims and her FMLA retaliation claim require "but for" causation, Defendant may not assert a "same decision" affirmative defense against these claims. *See Mora*, 597 F.3d at 1203–04. Accordingly, I **RECOMMEND** that Plaintiff's motion for summary judgment, (Doc. 60), be **GRANTED** as to Defendant's "same decision" affirmative defense to Plaintiff's ADA claims and FMLA retaliation claim.

## III.   CONCLUSION

For the foregoing reasons, I **RECOMMEND** that Plaintiff's motion for partial summary judgment, (Doc. 60), be **GRANTED IN PART AND DENIED IN PART**. Specifically, I **RECOMMEND** that Plaintiff's partial motion for summary judgment be **GRANTED** as to Defendant's "same decision" affirmative defense to Plaintiff's ADA claims and FMLA retaliation claim. I otherwise **RECOMMEND** that Plaintiff's partial motion for summary judgment be **DENIED.** I further **RECOMMEND** that Defendant's motion for summary judgment, (Doc. 62), be **DENIED** in its entirety.

Because this case presents no other issues referred to Magistrate Judges pursuant to Standing Order 18-01, the Clerk is **DIRECTED** to terminate the reference of this matter to the undersigned.

**IT IS SO RECOMMENDED**, this 3rd day of July, 2024.

_____
CHRISTOPHER C. BLY
UNITED STATES MAGISTRATE JUDGE