IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CARMEN BETHANCOURT,

    Plaintiff,

    v.

WAL-MART STORES EAST, LP,

    Defendant.

CIVIL ACTION FILE
NO. 1:22-CV-4211-TWT

## OPINION AND ORDER

This is an employment action. It is before the Court on the Magistrate Judge's Final Report and Recommendation ("R&R") [Doc. 85] recommending that the Plaintiff Carmen Bethancourt's Motion for Partial Summary Judgment [Doc. 60] be granted in part and denied in part, and that the Defendant Wal-Mart Stores East, LP's Motion for Summary Judgment [Doc. 62] be denied. The Defendant's objections to the R&R [Doc. 89], the Plaintiff's responses thereto [Doc. 92], and the Defendant's reply [Doc. 96] are also before the Court. For the reasons set forth below, the Defendant's objections are OVERRULED, and the R&R is ADOPTED as the judgment of this Court.

### I. Background

At the outset, the Court notes that the Defendant did not object to the Magistrate Judge's recitation of the facts and instead objected only to the analysis of those facts as applied to the Defendant's policies and the applicable law. Mainly, the Defendant disputes whether various pieces of evidence create

genuine disputes of material fact that preclude summary judgment. Thus, the Court will recite only a short summary of the facts necessary for context to its review.

The Plaintiff worked for the Defendant as a self-checkout cashier from February 2020 to May 2021. (Doc. 73-1 ¶¶ 1-3; Doc. 74-2 ¶¶ 22-23). The Plaintiff's job duties involved assisting customers in the self-checkout area, maintaining that area, and resolving customer concerns. (Doc. 73-1 ¶ 11; Doc. 74-2 ¶ 24). The Plaintiff suffers from a condition known as "pedal edema," which causes fluid to swell in her feet and ankles when she stands or walks for extended periods. (Doc. 73-1 ¶ 6). When the Plaintiff is going through a flare-up, she must sit down to rest and, at times, her doctors ask her to take time off work to rest and keep her feet elevated. (*Id.* ¶¶ 7-8).

The Defendant's Attendance and Punctuality Policy ("Attendance Policy") provides that "[r]egular and punctual attendance is a required and essential function of each associate's job." (Doc. 60-6 at 1). The Attendance Policy uses a points system to record unauthorized absences and states that, "[i]f you accumulate five (5) or more occurrences/points in a rolling six-month period you will be subject to termination." (*Id.* at 3). Under a section titled "Leave of Absence," the Attendance Policy states that "[i]f you need to be absent for longer than three scheduled shifts, you should talk to your supervisor or HR representative about applying for a leave of absence. Your supervisor or HR representative can assist you with the leave application process by

directing you to Sedgwick[1] to request a leave of absence (LOA)." (*Id.* at 6). The Defendant's managers have discretion to determine whether an unauthorized absence warrants a point and what to do if an employee has more than five points. (Doc. 73-1 ¶¶ 8-9). The Plaintiff's attendance records show that she had accumulated five attendance points as of April 22, 2021, and by May 9, 2021, she had accrued six more. (Doc. 73-1 ¶¶ 15-16; Doc. 60-7 at 6-7). The Plaintiff believed that her absences were due to her medical condition, but she did not communicate that to her supervisors except through the doctors' notes she presented. (Doc. 61 at 107:11-16; 110:18-25 to 111:1-20).

The Defendant also has an Accommodation in Employment policy ("Accommodation Policy") that outlines the steps to request a reasonable accommodation. The Accommodation Policy provides that an employee may request a reasonable accommodation "at any time by telling any salaried member of management in [her] facility . . . that, because of [her] condition, she need[s] help to do [her] job . . . [a] family member . . . may request such a change on [her] behalf." (Doc. 74-6 at 2). Additionally, the Defendant recognizes that "a request for FMLA leave can also be a request for reasonable accommodation if the serious health condition is also a disability." (Doc. 73-1 ¶ 20). The Accommodation Policy also outlines how to request FMLA leave, stating that "[y]ou must give 30 days' advance notice to your manager and

---

[1] Sedgwick is the Defendant's leave administration servicer.

Sedgwick if the need for leave is foreseeable." (Doc. 74-6 at 7). If the leave is not foreseeable, the Accommodation Policy directs employees to "give notice as soon as possible, generally the same day or the following business day after learning that you need to take leave." (*Id.*).

As relevant to the present action, the Plaintiff failed to report to work as scheduled on May 22, 2021. (Doc. 81-1 ¶ 2; Doc. 60-7 at 7). On either May 22 or 24, 2021, the Plaintiff's husband took her May 22nd doctor's note to her Team Lead, Sandy, although the exact date is unclear. (Doc. 73-1 ¶ 21; Doc. 74-3 ¶¶ 17-19; Doc. 81-1 ¶ 4). The note was also given to Sedgwick. (Doc. 73-1 ¶ 23). The May 22nd doctor's note stated that the Plaintiff suffered from pedal edema and requested medical leave for May 22nd and 23rd. (*Id.* ¶ 22; Doc. 60-7 at 8). A May 24th doctor's note requested leave for the 24th and 25th along with four weeks of restrictions, including: no standing for longer than five minutes, no walking for longer than five minutes, and directions to sit for 75% of the Plaintiff's working hours. (Doc. 60-7 at 9). The Plaintiff submitted an FMLA leave request, including these doctor's notes, to Sedgwick on May 24, 2021 and requested leave from May 22 through 25, 2021. (Doc. 81-1 ¶¶ 5, 10; Doc. 74-2 ¶ 37). Before Sedgwick could make a determination on the Plaintiff's request, it was informed that she had been terminated. (Doc. 56 at 26:10-18, 62:6-63:7; Doc. 64-1 at 2).

The evidence conflicts as to the date of the Plaintiff's termination, as the Magistrate Judge noted. The Defendant's records show in some places that she

was terminated on May 23, 2021, (Doc. 63-1, at 2, 5, 11, 13), and in another place that she was terminated on May 24, 2021, (*Id.* at 3). The records also state that the Plaintiff was terminated due to "[i]nvoluntary > Policy Violation." (*Id.* at 13). The Defendant's attendance records list the Plaintiff as absent from work on May 24, 2021. (Doc. 60-7 at 7). The Defendant's Rule 30(b)(6) representative was unaware of who made the decision to terminate the Plaintiff and did not know what factors were considered. (Doc. 56 at 67:22-25, 70:9-71:8).

The Plaintiff filed the present action on October 24, 2022, asserting four claims: disability discrimination under the ADA (Count I); failure to accommodate under the ADA (Count II); FMLA interference (Count III); and FMLA retaliation (Count IV). (Compl. ¶¶ 32-97). The Plaintiff moved for partial summary judgment as to liability as to Counts I, III, and IV, and as to the Defendant's "same decision" defense. (Doc. 60). The Defendant moved for summary judgment as to all claims. (Doc. 62). In his R&R, the Magistrate Judge recommended that the Plaintiff's Motion for Partial Summary Judgment [Doc. 60] be granted with respect to the Defendant's "same decision" defense and otherwise denied, and that the Defendant's Motion for Summary Judgment [Doc. 62] be denied in its entirety. [R&R, at 61]. The Defendant objected to several portions of the R&R, the Plaintiff responded to the objections, and the Defendant filed a reply. The Court will consider the objections and responses thereto in turn.

## II. Legal Standards

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

28 U.S.C. § 636(b)(1) requires district courts to "make a de novo determination of those portions of [an R&R] to which objection is made." "[A] party that wishes to preserve its objection must clearly advise the district court and pinpoint the specific findings that the party disagrees with." *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009). "Frivolous, conclusive, or general objections need not be considered by the district court." *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988). Additionally, district courts are not required to review portions of the R&R that are unobjected to, *Thomas v. Arn*, 474 U.S. 140, 150 (1985), and in most cases, "[a] party failing to object to [an R&R] waives the right to challenge on appeal the district court's order

based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1. Ultimately, whether objections are filed, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Therefore, the Court will not review any portions of the R&R that the Defendant did not object to, including the Magistrate Judge's grant of the Plaintiff's Partial Motion for Summary Judgment as to the Defendant's "same decision" defense.

### III. Discussion

#### A. Objections to Findings on the Plaintiff's ADA claims

##### a. Finding That a Genuine Dispute of Material Fact Exists as to Whether Plaintiff is a Qualified Individual under the ADA

The Defendant objects to the Magistrate Judge's finding that summary judgment was not warranted in its favor in part because there was a genuine issue of material fact as to whether the Plaintiff was a qualified individual under the ADA. (Def.'s Objs. to the R&R, [Doc. 89], at 3-4). In the R&R, the Magistrate Judge found that, given that the Attendance Policy subjects employees to termination after reaching five attendance points but the Plaintiff remained employed for another month after accruing five attendance points, there was a genuine dispute of material fact as to whether regular attendance (defined as fewer than five attendance points in a six-month period) was an essential function of the Plaintiff's job. (R&R at 35-37). More to the point, the Magistrate Judge found persuasive the fact that the Defendant did

7

not enforce its attendance policy despite the Plaintiff "accumulating nearly double the number of allowed attendance points." (*Id.* at 37).

The Defendant cites caselaw generally stating that employees must report to work regularly to be considered qualified individuals under the ADA and points to the nature of the Plaintiff's job as a customer-facing self-checkout clerk in support of its objection that attendance is an essential function such that the Plaintiff's excessive absences rendered her unqualified under the ADA. (*See* Def.'s Objs. to the R&R, at 4-7). The Defendant also objects that the Magistrate Judge misinterpreted the Attendance Policy, arguing that the Policy did not require it to terminate employees after accumulating five attendance points but merely gave it the discretion to do so. (*Id.* at 7-8). The Plaintiff responds that the Defendant misconstrues the Magistrate Judge's analysis and the question at issue, and the Court agrees. (Pl.'s Reply to Def.'s Objs. to the R&R, at 5-7).

A qualified individual is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Given that the Plaintiff was permitted to continue working for a month after accruing five attendance points, when she should have been subject to termination under the terms of the Attendance Policy, the Magistrate Judge correctly found that a genuine dispute of material fact existed as to whether regular attendance was actually an essential function of the Plaintiff's job duties and, therefore,

8

whether she was a qualified individual under the ADA. *Vessels v. Atl. Indep. Sch. Sys.*, 408 F.3d 763, 769 (11th Cir. 2005) (noting that "the prima facie case is designed to include only evidence that is *objectively verifiable*.") Here, the Defendant's reliance on the Attendance Policy as evidence that it required an attendance record of five or fewer attendance points in a six-month period as an essential job function is not objectively verifiable because the Plaintiff's own attendance records demonstrate that the policy was not always enforced. And to the extent the Defendant argues that the Magistrate Judge "misinterpreted" the Attendance Policy to *require* termination after five or more attendance points when in fact, its managers had discretion over awarding attendance points, subjective determinations have no place in the prima facie case inquiry. *See id.* ("If we were to hold an employer's subjective evaluations sufficient to defeat the prima facie case, the court's inquiry would end, and plaintiff would be given no opportunity to demonstrate that the subjective evaluation was pretextual."). So too, here. If the Court were to consider the Defendant's argument that the subjective nature of the attendance point system prevents the Court from concluding that there is a genuine dispute of material fact as to whether regular attendance was an essential function of the Plaintiff's job, the Plaintiff would be unable to demonstrate that the same subjective attendance point system is actually a pretext for discrimination in her case.

Moreover, as the Magistrate Judge noted, "Defendant's argument that Plaintiff is not a qualified individual because she cannot perform the allegedly

9

essential function of regular attendance overlaps entirely with its alleged reason for terminating Plaintiff." (R&R, at 36). Concluding that the Plaintiff is not qualified at this stage on the basis of her attendance record, which is also the Defendant's proposed legitimate reason for her termination, would essentially require the Plaintiff to prove pretext at the summary judgment stage in order to defeat summary judgment. *Vessels*, 408 F.3d at 769 ("[W]e cannot reconcile a rule that would essentially require a plaintiff to prove pretext as part of [her] prima facie case at the summary judgment stage with the Supreme Court's instruction that the plaintiff's prima facie burden is not onerous."). Therefore, the Magistrate Judge correctly concluded that there was a genuine dispute of material fact as to whether the Plaintiff was a qualified individual under the ADA, and the Defendant's objections as to this issue are overruled.

### b. Finding that the Defendant Did Not Carry its Evidentiary Burden under *McDonnell-Douglas*[2] as to Legitimate Reason

The Defendant also objects to the Magistrate Judge's conclusion that it failed to produce evidence as to (1) who made the decision to terminate the Plaintiff and (2) whether she was terminated because of her absences. (Def.'s Objs. to the R&R, at 9-12). The Defendant contends that the Magistrate Judge "elected not to consider any of Defendant's evidence about Plaintiff's termination, including its interrogatory responses." (*Id.* at 9). First, as to the

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

10

Defendant's interrogatory argument, the Magistrate Judge did in fact consider the Defendant's interrogatory responses but properly chose not to rely them. The Magistrate Judge explained that because the Defendant submitted only excerpts of the interrogatory responses, it was unclear who answered the interrogatories or whether they were verified, and the responses were not corroborated by any other evidence the Defendant proffered. (R&R, at 21-22). The Court agrees.

      The Defendant relies on the language of Fed. R. Civ. P. 56(c), the rule that lists the types of records a party must rely on in support of its position that a fact is not genuinely disputed, but the Rule does not require the Court to accept an interrogatory answer as a fact. Rule 56(c) also permits a party to challenge evidence, including interrogatory responses, on that grounds that the adverse party "cannot produce admissible evidence to support the fact," and the Plaintiff has done so here. Fed. R. Civ. P. 56(c)(1)(B). It is apparent that the Defendant could not produce admissible evidence to support its challenged interrogatory responses because, as the Magistrate Judge noted, the Defendant presented no evidence that would be admissible at trial corroborating its position that the Plaintiff was in fact terminated due to her absences. *See IMPACT of Nw. Fla., Inc. v. Firestone*, 893 F.2d 1189, 1193-94 (11th Cir. 1990) (recounting the reasoning and precedent for requiring "the introduction of admissible evidence of the actual reason for the action taken" with regard to the defendant's burden of proof). Moreover, summary judgment

11

cannot be granted where the evidence on an outcome-determinative issue is "merely colorable," such as the Defendant's lone, otherwise unsupported interrogatory responses. *See Anderson*, 477 U.S. at 249-50. Simply put, the Defendant's interrogatory responses might have been probative if they were supported by other admissible evidence. Here, they were not, and the Magistrate Judge properly determined the Defendant could not rely solely on its interrogatory responses to carry its legitimate reason burden under *McDonnell-Douglas*.

Second, and relatedly, the other evidence the Defendant cited in support of its position that the Plaintiff was terminated due to her absences did not demonstrate that the Defendant actually relied on, or even considered, the Plaintiff's absences in deciding to terminate her. As the Magistrate Judge noted, the evidence the Defendant presented demonstrated that the Plaintiff had excessive absences but did not demonstrate that it chose to terminate her *because of* those absences. (R&R, at 19-21). In its objections, the Defendant points out that its Workday records show that the Plaintiff was terminated for a "policy violation" and asserts that, under the Attendance Policy, the Plaintiff was subject to termination once she accrued five or more attendance points. (Def.'s Objs. to R&R, at 10). There is no factual dispute that the Plaintiff had accrued more than five attendance points as of the date of her termination. But as the Eleventh Circuit noted in *IMPACT of Nw. Fla., Inc.*, the Defendant must produce "evidence that [the] asserted reasons for discharge were *actually relied*

on." *IMPACT of Nw. Fla., Inc.*, 893 F.2d at 1194 (emphasis added) (quotation marks and citations omitted). The Defendant's evidence that the Plaintiff could have been terminated due to her absences under its Attendance Policy is therefore not enough to carry its burden under *McDonnell-Douglas* as outlined in *Burdine*.[3]

The Defendant further argues that "[t]he fact that Defendant has not identified a specific decisionmaker is not actually disputed and so there is no issue of fact for a jury to decide on that score" and that corporations are considered persons under the law. (Def.'s Objs. to the R&R, at 12). The Defendant's argument misconstrues the Magistrate Judge's analysis on this point. The Defendant is correct that there is no dispute that the Defendant did not identify a decisionmaker, but what the Defendant fails to understand is that the absence of the decisionmaker leads to a genuine dispute of material fact as to the Defendant's legitimate reasons for terminating the Plaintiff because the Court is unable to analyze the purported reasons without knowing what factors, including the Plaintiff's absenteeism, were known to the decisionmaker, and what factors the decisionmaker actually considered. Again, the Defendant is required to present evidence that the asserted legitimate reasons were "actually relied on," and "[w]ithout knowing who made the decision, it is impossible to know whether that person actually relied on

---

[3] *Tx. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248 (1981).

the asserted reasons." *Moore v. Cobb Cnty. Sch. Dist.*, 2021 WL 3661223, at *9 (N.D.Ga. Aug. 18, 2021) (quotation marks and alterations omitted) (citing *IMPACT of Nw. Fla., Inc.*, 893 F.2d at 1194). The Defendant's argument that corporations are considered persons under the law misses the mark for the same reason—there is no person, corporate or otherwise, in this case who has articulated the actual factors and reasons relied on in making the Plaintiff's termination decision. *See Turnes v. AmSouth Bank, NA*, 36 F.3d 1057, 1061 (11th Cir. 1994) ("[T]his Court has squarely held that an employer may not satisfy its burden of production by offering a justification which the employer either did not know or did not consider at the time the decision was made.").

Accordingly, the Defendant's objections as to this issue are overruled, as the Magistrate Judge properly found that the Defendant did not meet its burden under *McDonnell-Douglas* of demonstrating a legitimate reason with regard to the Plaintiff's ADA claims.

### B. Objections to Findings on the Plaintiff's FMLA claims

#### a. Finding That a Genuine Dispute of Material Fact Exists as to the Plaintiff's Termination Date

Next, the Defendant objects to the Magistrate Judge's conclusion that there was a genuine dispute of material fact as to whether the Plaintiff was terminated on May 23 or May 24, 2021. (Def.'s Objs. to the R&R, at 12-14). The Defendant argues that "the lone reference to May 24, 2021 on a single page out of fifteen pages of materials cannot be relied upon to create an issue of fact

14

about Plaintiff's termination date." (*Id.* at 13). But on a motion for summary judgment, the Court is required to construe the evidence in the light most favorable to the Plaintiff, and the Court cannot weigh the evidence for itself. *Adickes*, 398 U.S. at 158-59; *Anderson*, 477 U.S. at 249 ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."). Accepting the Defendant's invitation to ignore the evidence of a May 24, 2021 termination date would require the Court to defy these mandates and determine that the evidence demonstrating a May 23, 2021 termination date is uncredible. The Court cannot do so at this stage. Thus, the Magistrate Judge correctly concluded that, due to the conflicting evidence as to the Plaintiff's exact termination date, a genuine issue of material fact precluded the grant of summary judgment in Defendant's favor on the Plaintiff's FMLA claims. The Defendant's objections as to this issue are overruled.

### b. Finding That a Genuine Dispute of Material Fact Exists as to Whether the Plaintiff Requested FMLA Leave Before May 24, 2021

Finally, the Defendant objects to the Magistrate Judge's conclusion that there is a genuine dispute of material fact as to whether the Plaintiff requested FMLA leave before May 24, 2021. (Def.'s Objs. to the R&R, at 15-20). Again, the Defendant asks the Court to accept its version of the facts as the truth.

15

The Defendant specifically objects to the Magistrate Judge's finding that there is a genuine dispute of material fact as to whether the Plaintiff submitted her doctors' notes to Defendant's management before her termination and, even if she did, whether submitting the notes constituted a protected request under FMLA. (Def.'s Objs. to the R&R, at 15-16). The Defendant takes issue with the Plaintiff's deposition testimony, wherein the Plaintiff was unsure on which date the notes were brought to management, and with her husband not identifying in his declaration the name of the manger he left the notes with. (*Id.*). The Defendant argues that "neither Plaintiff nor her husband has presented clear evidence that they effectively notified Wal-Mart of her need for FMLA leave on May 22, 2021, or any other time before Plaintiff's May 24 request to Sedgwick." (*Id.* at 17).

When the need for FMLA leave is unforeseeable, federal regulations require an employee to "provide notice to the employer as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a). The notice may be given by a family member if the employee is unable to give notice personally. *Id.* Employees "shall provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request" but are not required to "expressly assert rights under the FMLA or even mention the FMLA" the first time they make a request for due to an FMLA-qualifying reason. 29 C.F.R. § 825.303(b).

16

The Court concludes that a reasonable jury could find that the Plaintiff submitted a protected request for FMLA leave via her husband on May 22nd, viewing the evidence in the light most favorable to the Plaintiff. First, there is no support for the Defendant's apparent contention that the Plaintiff's husband's declaration is not credible because he did not name the manager that he gave the Plaintiff's doctor's note to and, regardless, credibility determinations are not for the Court to make at this stage. *Anderson*, 477 U.S. at 249. Nor is the Plaintiff's deposition testimony as "unclear" as the Defendant portrays when viewed in her favor. The Plaintiff testified that her husband gave her doctor's note to Sandy, and her husband affirmed that he gave the note to a manager on May 22, 2021 (Pl.'s Dep., [Doc. 61], at 140:4-15; Doc. 74-14 at 4-8). Read together, a reasonable jury could conclude that the Plaintiff's husband gave her manager Sandy a doctor's note identifying her disability as pedal edema and requesting two days off of work, which constitutes notice of the need for unforeseen FMLA leave under 29 C.F.R. § 825.303(a), (b).

Moreover, the Defendant's argument that the Plaintiff did not comply with its policies for requesting FMLA leave is unavailing. The Defendant fails to quote the applicable portion of its Accommodation Policy as well. The Policy states that when leave is foreseeable, notice must be given to the manager and Sedgwick, but does not state who notice must be given to when leave is not foreseeable. (Doc. 74-6 at 7). It does state, however, that when leave is not foreseeable, the employee should "give notice as soon as possible, generally the

17

same day or the following business day after learning that you need to take leave." (*Id.*). Viewing the evidence in the light most favorable to the Plaintiff, there is a genuine dispute of material fact as to whether the Plaintiff complied with the Policy because although she did not contact Sedgwick until May 24, a reasonable jury could find that she gave notice the same day that she received the doctor's note—May 22, 2021—and that she properly gave notice to one of her managers. Accordingly, the Magistrate Judge properly found that the Defendant was not entitled to summary judgment as to the Plaintiff's FMLA claims, and the Defendant's objections as to this issue are overruled.

### IV. Conclusion

For the foregoing reasons, the Defendant's objections to the R&R are OVERRULED. The R&R [Doc. 85] is ADOPTED as the judgment of this Court. Accordingly, the Plaintiff's Motion for Partial Summary Judgment [Doc. 60] is GRANTED with respect to the Defendant's "same decision" defense and DENIED in all other respects. The Defendant's Motion for Summary Judgment [Doc. 62] is DENIED. Pursuant to L.R. 16.4(A), N.D.Ga., the parties are DIRECTED to file their consolidated pretrial order within 30 days of the date of this Order.

SO ORDERED, this ___17th___ day of September, 2024.

_/s/ Thomas W. Thrash_
THOMAS W. THRASH, JR.
United States District Judge